UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:  KIMBERLY A. GONZALES,                                         No. 23-10185-j7

Debtor.

**<u>MEMORANDUM OPINION</u>**

Debtor seeks to avoid a judicial lien under 11 U.S.C. § 522(f)[1] as impairing her $60,000

homestead exemption.[2] Lien avoidance in this case depends entirely on the value of Debtor's

property. Debtor's appraiser valued the property at $50,000 whereas the creditor's appraiser

appraised the property with a significantly higher value of $95,000. Complete avoidance of the

creditor's judicial lien under § 522(f)'s statutory formula is possible only if the value of the

Debtor's property is $60,000 or less. As fact finder, the Court must fix the value of the property

based on the evidence; however, given the subjective nature of the appraisal process, the Court

has considerable discretion[3] and "is not bound to accept the values contained in the parties'

appraisals . . . [but] may form its own opinion of the value of the subject property after

considering the appraisals and expert testimony." *In re Hayes*, 657 B.R. 519, 528 (Bankr. D.S.C.

2024) (quoting *In re Smith*, 267 B.R. 568, 572-73 (Bankr. S.D. Ohio 2001)). After considering all

the evidence admitted at the final hearing, the Court finds and determines that the value of the

Debtor's property on the petition date was no more than $60,000. The Court will, therefore, grant

the Motion to Avoid Lien.

---

[1] All future statutory references are to Title 11 of the United States Code, unless otherwise noted.
[2] *See* Motion to Avoid Lien (Doc. 16).
[3] "Great deference is given to the bankruptcy court's fact-finding in determining value." *In re Hadley*, 561 B.R. 384, 395 (6th Cir. BAP 2016).

FINDINGS OF FACT[4]

Debtor owns a 1,557 square foot manufactured home affixed to a permanent foundation situated on one acre of land in Algodones, New Mexico, with an address of 398 North Mesa Vista Drive (the "Property").[5] The Property includes a septic tank and well. Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on March 9, 2023 (the "Petition Date"). The Property was Debtor's principal residence on the Petition Date and continues to be Debtor's principal residence. Debtor claimed a homestead exemption in the Property in the amount of $60,000 pursuant to NMSA 1978, § 42-10-9. No creditor or party in interest objected to the Debtor's claimed homestead exemption.

Creditor Enterprise Bank & Trust ("EBT") is the current holder of a pre-petition judgment obtained against the Debtor and two transcripts of judgment recorded against the Property. As of the Petition Date, Debtor owed EBT $65,000 based on the judgment. There are no other liens against the Property.

On the Petition Date, Debtor's manufactured home had a hole through the roof and the ceiling above the living room, faulty electrical outlets, a non-working furnace, no hot water, and broken windows. The hole in the roof occurred in late January of 2023. It was caused by a cooling unit known as a swamp cooler that leaked. The leak went through the ceiling causing the cooling unit to fall through the roof because the roof could not support it. Debtor could not afford to pay for roof repairs. She applied to a non-profit organization that agreed to repair the roof at no cost to the Debtor. Structural damage to the roof required installation of a new roof. A

---

[4] The parties filed stipulated facts relating to Debtor's Motion to Avoid Lien. *See* Enterprise Bank & Trust & Debtor's Stipulated Facts on Motion to Avoid Lien ("Stipulated Facts" – Doc. 32); Exhibit A. All Stipulated Facts are deemed established for ruling on the Moton to Avoid Lien. The Findings of Fact restate some of the Stipulated Facts. The remainder of the Stipulated Facts are incorporated herein by reference.
[5] There is also an uninhabitable single-wide mobile home located on the Property.

Case 23-10185-j7    Doc 40    Filed 09/30/24    Entered 09/30/24 15:13:12 Page 2 of 13

completely new roof was installed post-petition in June of 2023. It took approximately two weeks to complete the job. The repairs included repairs to the interior ceiling, which had water marks and water damage from the leaky cooling unit. No evidence of the actual cost incurred to repair the roof was presented. Nor was any evidence of roof repair estimates presented at the final hearing.

All but two electrical outlets in the Property are faulty. The faulty outlets are black, and they spark if Debtor attempts to use them. Debtor uses an extension cord that has additional outlets to avoid using the faulty outlets. Debtor's furnace is not working. She estimated that it would cost $3,000 to repair the furnace. To heat her home, Debtor uses space heaters. The Property has a metal fence, but otherwise has no landscaping. The Property does not have air conditioning, the stove does not work, and the sliding door and flooring were damaged such that the door does not open. The shower in the primary bedroom does not work. The conditions described in this paragraph existed before Debtor commenced her bankruptcy case and on the Petition Date. Since the Petition Date, Debtor has had the water heater fixed.

Debtor is disabled. She also fosters her two grandchildren, ages 8 and 10. Her only income is from disability payments and government assistance for the care of her grandchildren. Debtor has lived in the Property for about eight years.

Debtor's Property is located on the east side of I-25 in a rural area. Property in Algodones east of I-25 is less desirable and, consequently, generally less valuable than property located west of I-25, which is closer to the river and can be used for agricultural purposes. Property east of I-25 is considered desert in the sand dunes. The real estate market in the Algodones area is stable.[6]

---

[6] *See* Exhibit 1 and Exhibit D.

Because the Property is located in a rural area, it is difficult to find similar properties when using the comparison sales method of valuation.

*Debtor's Appraisal*

Debtor's appraiser, Gregory N. Moody, prepared an appraisal of the Property as of March 23, 2023 (the "Moody Appraisal").[7] Mr. Moody conducted an on-site inspection of the Property, both inside and out. He valued the Property at $50,000, including the manufactured home Debtor uses as her primary residence and the one-acre lot upon which the manufactured home is situated. Mr. Moody used the comparable sales method of valuation to value the Property. Each of the three comparable sales in the Debtor's appraisal were manufactured homes that "needed work."[8] Mr. Moody did not ascertain the type of repairs for each of the comparable sales; instead, he considered those properties as similar to Debtor's Property simply because the properties were in need of repairs. He drove by each of the comparable sales properties, but did not conduct an on-site inspection of any of the comparable sales properties. The starting value of the three comparable sales properties in the Moody Appraisal range from $75,000 to $100,000, with adjusted values to equate the values of the comparables to the value of the Property ranging from $39,400 to $59,000. None of the comparable sales properties are located east of I-25, near the Debtor's Property. One of the properties Mr. Moody used is located in Albuquerque, more than fifteen miles away from the Property.[9]

Mr. Moody ascribed a site value of $20,000 for the Property based on a 3.04 acre parcel of vacant land with a per-acre sales price of $24,013.16, and another 7 acre parcel of vacant land with a listing price of $12,142.86 per acre.[10] Neither of the vacant parcels of land that Mr.

---

[7] Exhibit 1.
[8] Exhibit 1, p. 3.
[9] *Id.* (Comparable Sale # 2).
[10] Exhibit 1, p. 2.

Moody relied upon to support the $20,000 value of Debtor's site were for parcels that included a septic tank and well.

Mr. Moody prepared his appraisal report using a form typically used by lenders. His appraisal incorrectly identifies EBT as the "Lender/Client." Mr. Moody's appraised value of $50,000 for the Property takes into account the following conditions that existed in March of 2023: 1) a roof leak over the dining room and hole in the roof; 2) no functioning water heater; 3) many electrical outlets that spark when something is plugged into them; 4) a non-working air conditioning and non-working furnace; 5) three broken windows; and 4) non-functioning shower in the primary bathroom.[11] Even so, Mr. Moody gave the Property a quality of construction rating of "Average" based on a scale range of "Poor," "Fair," "Average," "Good," and "Excellent."[12]

*Creditor's Appraisal*

EBT's appraiser, Caterina Platt, appraised the Property as of March 9, 2023 (the "Platt Appraisal Date"). Ms. Platt's appraisal (the "Platt Appraisal") concluded that the appraised value of the Property on the Platt Appraisal Date was $95,000, including the manufactured home Debtor uses as her primary residence and the one-acre lot.[13] Like Mr. Moody, Ms. Platt used the comparable sales method of valuation to value the Property. Ms. Platt used four comparable sales to aid in valuing the Property. The starting value of the four comparable sales properties included the Platt Appraisal range from $87,000 to $166,000, with adjusted values to equate the value of

---

[11]Mr. Moody's appraisal includes two pictures of the hole in the ceiling and roof. *See* Exhibit 1, p. 14.
[12] *See* Exhibit 1, p. 2.
[13] *See* Exhibit D.

the comparables to the value of the Property ranging from $70,580 to $100,720.[14] Three of the four comparable sales properties are located west of I-25.[15]

Ms. Platt ascribed a site value of $33,000 for the Property based a sales price of $38,000 for a .69 acre lot ($43,478 per acre) and a sales price of $35,000 for a .84 acre lot ($39,285.71 per acre) for vacant land located very close to the Property on the east side of I-25.[16] Mr. Moody testified that he wished he had found those comparable sales of vacant land when he prepared his appraisal of the Property.

The Platt Appraisal notes that the manufactured home on the Property "is reported to require repairs to the furnace, water heater, and many cosmetic repairs that render it in 'Fair' condition and below typical market," and that Debtor reported "bids of $1,400 for water heater replacement and $3,000 for furnace repairs."[17] Ms. Platt rated the quality of construction of the manufactured home on the Property as "Average," and rated the overall condition of the Property as "Fair."[18] At the time Ms. Platt inspected the Property, there were no holes in the roof or ceiling, and there was a large cooling unit on the window. Ms. Platt did not make any adjustment to the value of the Property based on a hole in the roof or ceiling because she had no information to substantiate whether that condition was present as of March 9, 2023, the effective date of her appraisal. Consequently, Ms. Platt's appraisal does not take into account the fact that the manufactured home had a hole in the roof as of the Petition Date which required a total roof replacement and repairs to the interior ceiling.

---

[14] Exhibit D, p. 4.
[15] *Id.* at p. 19.
[16] *See* Exhibit E.
[17] *See* Exhibit D, p. 3.
[18] *See* Exhibit D, p. 4.

Comparable sale #4 in the Platt Appraisal ("Platt Comparable No. 4") is a property located very near the Debtor's Property.[19] Platt Comparable No. 4 sold in August of 2020 for $87,000.[20] Based on the delay between the sales date of Platt Comparable No. 4 and the Platt Appraisal Date, Ms. Platt made an upward adjustment of $22,700 to Platt Comparable No. 4.[21] Ms. Platt also made and upward adjustment of $3,000 to Platt Comparable No. 4 because it is on a slightly smaller lot than the Debtor's Property.[22] Ms. Platt made downward adjustments to Platt Comparable No. 4 as follows:[23]

| Adjustment | Reason for Adjustment |
|---|---|
| -$10,000 | Better condition |
| -$24,120 | 603 more square feet of living area |
| -$4,000 | One more half-bath |
| -$1,000 | Functioning heating/cooling |
| -$3,000 | Partial landscaping |

The total net adjustment to Plat Comparable No. 4 is -$16,420, resulting in an adjusted total comparable value of $70,580.[24] Ms. Platt reported that Platt Comparable No. 4 "required some repair items and an element of 'unknown' condition due to the foreclosed status."[25]

Both appraisers agree that the market in the Algodones area is stable. Of all the comparable sales either appraiser used to value the Property, only Platt Comparable No. 4 is actually comparable to the Debtor's Property. Platt Comparable No. 4 is the only property in the Moody Appraisal or Platt Appraisal located in Algodones, New Mexico east of I-25.

---

[19] *See* Exhibit D, p. 19.
[20] *See* Exhibit D, p. 5.
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*

Based on the evidence presented at the final hearing, including the two appraisals, the testimony of Mr. Moody and Ms. Platt, and Debtor's testimony, the Court finds that the total value of the Property is no more than $60,000 as of the Petition Date, including a site value of $33,000.

DISCUSSION AND ADDITIONAL FINDINGS OF FACT

"The broad purpose of § 522(f) is 'protecting the debtor's exempt property.'" *In re Taylor,* 899 F.3d 1126, 1130 (10th Cir. 2018) (quoting *Farrey v. Sanderfoot*, 500 U.S. 291, 297-98 (1991)). It allows a debtor to avoid the fixing of a judicial lien against the debtor's interest in property to the extent the lien impairs the debtor's exemption in the property. § 522(f)(1). In other words, "[s]ection 522(f) . . . allows Debtors to avoid a creditor's interest in their property if that property would be exempt but for the existence of the creditor's lien." *In re Harris*, 652 B.R. 587, 590 (Bankr. S.D.N.Y. 2023). Impairment is calculated based on the following statutory formula:

> [A] lien shall be considered to impair an exemption to the extent that the sum of—
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

§ 522(f)(2)(A).

Debtor and EBT agree that 1) the Debtor is entitled to a homestead exemption of $60,000 against the Property; 2) EBT recorded two transcripts of judgment against the Property based on a pre-petition judgment against the Debtor; and 3) EBT was owed $65,000 on its judgment as of the Petition Date. There is no evidence of any other liens against the Property. Transcripts of judgment are a form of judicial lien subject to avoidance under § 522(f). *See* § 101(36) ("The

term 'judicial lien' means a lien obtained by judgment, levy, sequestration, or other legal or

equitable process or proceeding."); *In re Gregory Rockhouse Ranch*, 380 B.R. 258, 262 (Bankr.

D.N.M. 2007) ("Transcripts of judgment are the type of judicial lien that is avoidable under 11

U.S.C. § 522(f)."); *In re Morgan*, No. 7-09-11942 JA, 2009 WL 3617613, at *2 (Bankr. D.N.M.

Oct. 28, 2009) (same). Thus, EBT's transcripts of judgment are subject to avoidance to the extent

they impair the Debtor's $60,000 homestead exemption. The only disputed component needed to

apply the statutory formula is the value of the Property.

The petition date is the appropriate valuation date for determining lien avoidance under

§ 522(f). *In re Sawyers*, 2 F. 4th 1133, 1138 (8th Cir. 2021) ("It is well settled that the value of a

debtor's homestead Is determined based on the property's fair market value as of the petition

date."); *In re Pacheco*, 342 B.R. 352, 357 (Bankr D.N.M. 2006) ("[T]he petition date is the

operative date to make all § 522(f) determinations." (quoting *In re Salanoa*, 263 B.R. 120, 123

(Bankr. S.D. Ca. 2001)). To establish value, each party provided an appraisal of the Property, and

each appraiser provided testimony in support of his or her appraisal.

The competing appraisals reflect widely different values. The Platt Appraisal offered by

EBT estimates that the Property was worth $95,000 on the Petition Date.[26] The Moody

Appraisal, offered by Debtor, values the Property as of March 23, 2024 (two weeks *after* the

Petition Date) at $50,000.[27] When faced with competing expert valuations, the Court has

considerable discretion to fix the value of a debtor's property and "is not bound by any figure in

particular, but [is] merely guided by them all." *In re Gucciardo*, 576 B.R. 297, 300 (Bankr.

E.D.N.Y. 2017) (quoting *In re Hannigan*, No. 02-46969-JBR, 2005 WL 3275485, at *2 (Bankr.

D. Mass. Oct. 3, 2005)). In other words, the Court "'is not bound by the expert reports or

---

[26] *See* Exhibit D.
[27] *See* Exhibit 1.

opinions of appraisers,'" 2) "may accept an entire appraisal or give weight to only a portion of the report," and 3) may fix its own value for the property based on the evidence. *McWilliams v. Redstone Fed. Credit Union (In re McWilliams)*, No. 15-83117-CR-7, 2016 WL 4991502, at \*1 (Bankr. N.D. Ala. Sept. 16, 2016) (quoting and citing *In re Grind Coffee & Nosh, LLC*, No. 11-50011-KMS, 2011 WL 1301357, at \*6 (Bankr. S.D. Miss. Apr. 4, 2011)). When faced with competing appraisals, "the court must consider portions of each report in order to arrive at a realistic market value." *Id.* Finally, "heightened scrutiny" of the appraisals is appropriate when they arrive at widely divergent values. *Id.* (quoting *Int'l Bank of Com. v. Davis (In re Diamond Beach VP, LP)*, 506 B.R. 701, 717 (Bankr. S.D. Tex. 2014)).

Having scrutinized both appraisals and considered the testimony of both appraisers, the Court finds neither appraisal provides a reasonable estimate of the true fair market value of the Property as of the Petition Date. Debtor's appraised value of the Property is simply too low. Debtor's appraiser, Mr. Moody, chose properties in his comparable sales analysis that were not at all comparable to the Property. As a result, he had to make major adjustments to those properties as compared to the Property.[28] His $20,000 site value for the Property was based on much larger tracts of undeveloped property.[29] Because his site value is too low, his overall value of $50,000 is also too low. The Moody Appraisal does, however, take into account the condition of Debtor's roof as of the Petition Date.

The Platt Appraisal is also flawed. Although it establishes an appropriate site value of $33,000 for the Property based on sales of comparable unimproved lots,[30] the Platt Appraisal fails to make any adjustment based on the hole in the roof of Debtor's manufactured home that

---

[28] *See* Exhibit 1 (reflecting net adjustments to the comparable sales between 40.7% to 57% of the starting sales price).
[29] *See* Exhibit 2, p. 2.
[30] *See* Exhibit E.

-10-

existed as of the Petition Date. Ms. Platt testified that she did not make any adjustment for the damaged roof because the roof was not damaged when she visited the Property and she had no evidence to support Debtor's assertion concerning the condition of the roof on the Petition Date. The Court accepts Debtor's credible testimony and the photos attached to the Moody Appraisal to establish that the Property had a hole in the roof on the Petition Date, which ultimately required a complete roof replacement. No evidence was provided to the Court to establish the cost of the roof repair. Yet, a significant hole through the roof and the ceiling above the living room in a manufactured home causing structural damage to the roof requiring a total roof replacement significantly and negatively affected the Property's value. A hole and leak of that magnitude, in the Court's opinion, would render the Property largely uninhabitable until the roof was replaced, and Ms. Platt's appraised value of the Property does not take that major problem into account.

In considering both the Moody Appraisal and the Platt Appraisal, the most comparable property to the Debtor's Property is Platt Comparable No. 4. The adjusted value of Platt Comparable No. 4 was $70,580.[31] However, Ms. Platt's adjustments to that comparable property did not take into account the Debtor's estimate of the cost to replace the water heater and repair the furnace, which Ms. Platt noted in her appraisal were $1,400, and $3,000, respectively.[32] Platt Comparable No. 4 included a downward adjustment of $1,000 for its non-functioning heating/cooling systems, but did not otherwise make an adjustment based on Debtor's estimated $4,400 to replace the water heater and repair the furnace. If Platt Comparable No. 4 were adjusted further to account for the difference in Debtor's estimated repair and replacement costs for the water heater and furnace, the adjusted comparable value would be $67,180. However,

---

[31] *See* Exhibit D, p. 5.
[32] *See* Exhibit D, p. 3.

that adjusted value still does not account for the cost to replace the roof and repair the ceiling; nor does it make any adjustment based on the faulty electrical system.

Even without any evidence of the actual cost to replace Debtor's roof, repair the ceiling in the living room, and repair the faulty electrical system, and taking into account that Debtor bears the burden of proof, the Court finds that the fair market value of the Property on the Petition Date was no more than $60,000. This finding takes into account the location, size, and nature of the Property, and the condition of the Property as a whole on the Petition Date, which included a lot worth $33,000, no hot water, no air conditioner, no functioning heating system (other than use of space heaters), an overloaded electrical system resulting in only two functioning outlets in the entire house, no landscaping apart from a metal fence, a large hole in the roof over the living room requiring a complete roof replacement due to structural damage, a stove that did not work, a damaged sliding door such that the door does not open, damaged flooring, and a shower that did not work.

Application of § 522(f)'s formula yields the following calculation: $65,000 (EBT's lien amount) + $0.00 (the amount of all other liens on the Property) + $60,000 (the amount of Debtor's exemption in the Property in the absence of any liens) = $125,000. Under the formula, the entire $65,000 of EBT's lien impairs Debtor's homestead exemption because the sum of the applicable liens and the Debtor's homestead exemption ($125,000) exceeds the $60,000 fair market value of the Property by $65,000, the total amount of EBT's lien.[33] Consequently, EBT's judicial lien can be avoided in its entirety.

---

[33] A more straightforward way to apply the statutory lien avoidance formula is to begin with the fair market value of the property and subtract from that figure the amount of any consensual liens and the amount of the applicable allowed exemption; if the result is greater than zero but less than the amount of the judicial lien, that amount is the amount of the judicial lien that cannot be avoided. *See McWilliams,* 2016 WL 4991502, at *1. If the result is zero or less, then the judicial lien can be avoided in its entirety. Applying this calculation method to this case yields the following: $60,000 (the fair market value of the

The Court will enter a separate order granting the Motion and avoiding EBT's judicial lien.

_Robert H. Jacobvitz_ (signature)

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: September 30, 2024

COPY TO:

Matthew Robert Gandert
Attorney for Debtor
Affordable Law PC
1128 Pennsylvania St. NE, Suite 210
Albuquerque, NM 87110

James Jurgens
Attorney for Enterprise Bank & Trust
100 La Salle Cir Ste A
Santa Fe, NM 87505-6976

---

Property) – $00.00 (the amount of consensual liens) – $60,000 (the amount of Debtor's exemption) = $00.00. Because there is no value left in the Property from which to pay EBT's $65,000 judicial lien, EBT's judicial lien is avoidable in its entirety.